SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
MICHAEL H. AHRENS, Cal. Bar No. 44766
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal. Bar No. 246048
TIMOTHY C. PERRY, Cal. Bar No. 248543
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

Attorneys for ARRIVA PHARMACEUTICALS, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Hon. Edward D. Jellen

| | |
|---|---|
| SONORAN DESERT CHEMICALS, LLC AND PROTEASE SCIENCES, INC., | Consolidated Case Nos. 08-00692-SI and 08-00693-SI |
| Claimants-Appellants, | **APPELLEE'S BRIEF [PROTEASE AND SONORAN CLAIMS APPEALS]** |
| v. | Date:     July 24, 2008 |
| ARRIVA PHARMACEUTICALS, INC., | Time:     3:30 p.m. |
| Reorganized Debtor-Appellee. | Location: Courtroom 10, 19th Floor |
| | 450 Golden Gate Ave. |
| | San Francisco, CA 94102 |

## TABLE OF CONTENTS

Page

I.   STATEMENT OF THE CASE ............................................................................ 1

II.  STANDARDS OF REVIEW ............................................................................. 2

III. STATEMENT OF THE FACTS ........................................................................ 2

    A.   The Background of the Disallowed Claims. ................................................ 3

    B.   The Arizona Court Upholds the Protease License and Issues
        Injunctions Against the Lezdeys. ................................................................ 3

    C.   The Northern District of California Recognizes the Arizona Court's
        Rulings and Finds John Lezdey to Lack the Capacity to Act on Behalf
        of Sonoran. ................................................................................................. 6

    D.   Arriva Prevails Against Similar Claims by AlphaMed in Florida. ............. 7

    E.   Arriva's Bankruptcy Case and the Disallowance of the Sonoran and
        PSI Claims. ................................................................................................. 8

    F.   This Appeal. ............................................................................................... 10

IV.  SUMMARY OF THE ARGUMENT ................................................................ 11

V.   ARGUMENT .................................................................................................... 11

    A.   The Bankruptcy Court Correctly Found that the Preliminary
        Injunction Deprived John Lezdey of Authority to File the Proofs of
        Claim. ......................................................................................................... 11

        1.   The Bankruptcy Court Properly Gave Full Faith and Credit to
            the Arizona Court's Findings in the Preliminary Injunction. ............. 12

            a.   Full Faith and Credit and Collateral Estoppel in
                Arizona. ................................................................................. 12

            b.   The Bankruptcy Court Correctly Found That Collateral
                Estoppel Applies to the Issue of John Lezdey's
                Authority to Act on Behalf of PSI and Sonoran. .................... 14

    B.   The Bankruptcy Court Correctly Evaluated the Legal Basis for the
        Claims Under Applicable Non-Bankruptcy Law in Order to Give
        Preclusive Effect to the Preliminary Injunction. ........................................ 16

1.     The Bankruptcy Court's Ruling Expressly Disclaimed Reliance on Rooker-Feldman and Instead Cited Applicable Non-Bankruptcy Law as its Basis. ............................................................ 16

2.     The Bankruptcy Court's Reasoning Is Supported by the Purpose and Mechanics of Bankruptcy Code Section 502. ............. 17

3.     An Understanding of the Bankruptcy Court's Role Under 11 U.S.C. § 502(b)(1) Refutes Other of the Appellants' Arguments. ........................................................................................ 18

C.    This Court Should Refrain From Considering Those Arguments of the Appellants that Were Not Raised Below........................................................ 19

D.    Appellants' Newly-Raised Arguments Have No Merit. ................................ 20

1.     Arriva Had Standing to Object to the Claims of Sonoran and PSI. ........................................................................................... 20

2.     The Bankruptcy Court Did Not Encroach Upon Corporate Law. ........................................................................................... 22

3.     The Apparent Authority Doctrine Neither Applies Nor Validates Mr. Lezdey's Filing of the PSI and Sonoran Claims.......... 23

VI.    CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*In re A.G. Financial Service Center, Inc.*,
   395 F.3d 410 (7th Cir. 2005)..................................................................................... 18

*AlphaMed v. Arriva*,
   432 F.Supp.2d 1319 (S.D. Fla. 2006) ......................................................................7

*In re America West Airlines*,
   208 B.R. 476, Bankruptcy Code Section 502 (b)................................................17, 22

*Blitch Ford, Inc. v. MIC Prop & Casualty Insurance Corp.*,
   90 F.Supp.2d 1377 (M.D. Ga. 2000) .......................................................................14

*Butner v. United States*,
   440 U.S. 48 (U.S. 1979)............................................................................................18

*In re Cool Fuel, Inc.*,
   117 Fed. Appx. 514 (9th Cir. 2004) ........................................................................23

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (U.S. 1983)...........................................................................................1

*In re Eastview Estates II*,
   713 F.2d 443 (9th Cir. 1983).....................................................................................18

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*,
   544 U.S. 280 (U.S. 2005)..........................................................................................17

*In re Frazier*,
   16 B.R. 674 (Bankr. M.D. Tenn. 1981) ..............................................................17, 22

*Future Realty, Inc. v. City of Spokane*,
   331 F.3d 1082 (9th Cir. 2003)...................................................................................22

*Gens v. Resolution Trust Corp.*,
   112 F.3d 569 (1st Cir.1997) ......................................................................................21

*In re Ginn*,
   186 B.R. 898 (Bankr. D. Md. 1995) .........................................................................18

*In re Goco Realty Fund I*,
   151 B.R. 241 (Bankr. N.D. Cal. 1993)......................................................................18

*In re Gottheiner*,
   703 F.2d 1136 (9th Cir. 1983)...................................................................................13

*Montana v. United States*,
   440 U.S. 147 (1979)..................................................................................................13

*Noel v. Hall*,
   341 F.3d 1148 (9th Cir. 2003)...................................................................................12

*In re Park-Helena Corp.*,
  63 F.3d 877 (9th Cir. 1995)..................................................................... 2

*Rooker v. Fidelity Trust*,
  263 U.S. 413 (U.S. 1923) ......................................................................... 1

*Singleton v. Wulff*,
  428 U.S. 106 (U.S. 1976) ....................................................................... 20

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ............................................................... 20

*Sousa v. Miguel*,
  32 F.3d 1370 (9th Cir. 1994) ................................................................... 2

*Travelers Casualty & Surety Company of America v. Pacific*
  *Gas and Electric Company*,
  127 S. Ct. 1199 (2007); ......................................................................... 18

*Tripati v. Henman*,
  857 F.2d 1366 (9th Cir. 1988) ............................................................... 15

*United States v. Rode Corp.*,
  996 F.2d 174 (7th Cir. 1993) ................................................................. 20

*In re W.R. Grace & Co.*,
  366 B.R. 302 (Bankr. D. Del. 2007) ..................................................... 22

*W. Radio Services Co. v. Glickman*,
  123 F.3d 1189 (9th Cir. 1997).............................................................. 13

*Walls v. Wells Fargo Bank, N.A.*,
  255 B.R. 38 (E.D. Cal. 2000)................................................................. 23

State Cases

*Campbell v. Szl Properties*,
  204 Ariz. 221 (Ct. App. 2003) .............................................................. 15

*City of Glendale v. Aldabbagh*,
  189 Ariz. 140 (Ariz. 1997)......................................................... 12, 13, 14

*Dressler v. Morrison*,
  212 Ariz. 279 (2006) ............................................................................. 13

*Elia v. Pifer*,
  977 P.2d 796 (Ariz. Ct. App. 1998) ................................................ 12, 13

*Ermoian v. Desert Hospital*,
  152 Cal.App.4th 475 (Cal. Ct. App. 2007) ........................................... 24

*Farmers Insurance Co. v. Vagnozzi*,
  138 Ariz. 443 (1983) ............................................................................. 13

-iv-

*Hall v. Lalli,*
    194 Ariz. 54 (1999) ...................................................................................... 13, 15

*Hullett v. Cousin,*
    204 Ariz. 292 (2003) ........................................................................................ 13

*Matusik v. Arizona Public Serv. Co.,*
    141 Ariz. 1 (Ct. App. 1984) ............................................................................ 13

*Phinisee v. Rogers,*
    229 Mich. App. 547 (1998) ............................................................................. 13

*State v. Shallock,*
    941 P.2d 1275 (Ariz. 1997) ............................................................................ 12

*Wetzel v. Arizona State Real Estate Department,*
    151 Ariz. 330 (Ct. App. 1986) ........................................................................ 13

Docketed Cases

*Wachter v. Lezdey,*
    Case No. CV-99-009335 ................................................................................... 7

Federal Statutes

U.S. Const., art IV, § 1 .......................................................................................... 12

United States Code
    11 U.S.C. § 362(d) ........................................................................................... 24
    11 U.S.C. § 502(a) ...................................................................................... 17, 22
    11 U.S.C. § 502(b)(1) ........................................................ 1, 2, 11, 16, 18, 19, 23
    11 U.S.C. § 502(c) .............................................................................................. 9
    28 U.S.C. § 1731 .............................................................................................. 12

Federal Rules of Civil Procedure
    Rule 50(b)    ...................................................................................................... 7
    Rule 3001(b)    ..................................................................................... 21, 22, 23

Other Authorities

4 COLLIER ON BANKRUPTCY (15th ed. rev. 2008) § 502.03 ........................................... 18

# I. STATEMENT OF THE CASE

On October 9, 2007, Protease Sciences, Inc. ("PSI") filed a claim (the "PSI Claim") in the bankruptcy case of Arriva Pharmaceuticals, Inc. ("Arriva"). (Appellants' Combined Appendix[1], 004). That same day, Sonoran Desert Chemicals, LLC ("Sonoran", and together with PSI, "Appellants") also filed a claim in Arriva's bankruptcy case (the "Sonoran Claim", and together with the PSI Claim, the "Claims"). (AA 024.) Each of the Claims alleged the same three bases in support of its request for payment. (AA 005, 025.) Importantly, each proof of claim was signed by John Lezdey alone. (AA 004, 024.)

After Arriva objected to the PSI and Sonoran Claims, the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") disallowed each of the Claims and alternatively estimated them at zero for the purposes of voting on Arriva's plan of reorganization. (AA 517, l.25 – 518, l.14; 521, l.7-11). In its ruling, the Bankruptcy Court stated that because of the preliminary injunction issued against Mr. Lezdey by the Superior Court of Maricopa County, Arizona, Mr. Lezdey "can't do anything" on behalf of PSI and Sonoran "as a matter of nonbankruptcy state law." (AA 518:3-9.) The Bankruptcy Court expressly stated that its jurisdiction was not restricted by the Arizona court's rulings, thus disclaiming any reliance on the Rooker-Feldman doctrine.[2] (AA 518:3-5.) The orders of the Bankruptcy Court (the "Disallowance Orders") disallowing the PSI and Sonoran Claims without leave to amend and alternatively estimating each of the Claims at zero for voting purposes were entered on December 27, 2007. (AA 435-36, 439-40.)

The Bankruptcy Court was correct when it disallowed the Claims of PSI and Sonoran. The Bankruptcy Court accurately carried out its function under Bankruptcy Code 502(b)(1) and evaluated the Claims' validity under applicable non-bankruptcy law. In so

---

[1] Hereinafter, citations to Appellants' Combined Appendix shall be in the following form: (AA 001.)

[2] Stated briefly, the Rooker-Feldman doctrine holds that a lower federal court does not have jurisdiction to review the decisions of a state court. *Rooker v. Fidelity Trust*, 263 U.S. 413 (U.S. 1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (U.S. 1983).

1   doing, the Bankruptcy Court correctly gave preclusive effect to the Preliminary Injunction

2   issued by the Arizona Court that deprived John Lezdey of authority to act on behalf of PSI

3   and Sonoran.  This was the sole reason for the Bankruptcy Court's decision and so is the

4   focus of this brief.[3]

5           The Appellants' arguments in their Opening Brief, many of which were not raised

6   below and so should be deemed waived, are without merit.  Arriva clearly has standing to

7   object to the claims of PSI and Sonoran both because the Preliminary Injunction was

8   intended for its benefit and because at the time of the Objection it was a Chapter 11 debtor

9   from whom PSI and Sonoran sought payment of considerable sums.  The contentions that

10  the Bankruptcy Court encroached upon state and corporate law simply misunderstand the

11  function of a bankruptcy court under Bankruptcy Code Section 502(b)(1) and are wrong.

12  The contention that the apparent authority doctrine validates the filing of the Claims not

13  only misunderstands the Bankruptcy Code but also the apparent authority doctrine itself.

14          The Bankruptcy Court was correct in disallowing the Claims of PSI and Sonoran.

15  This Court should affirm.

## II.  STANDARDS OF REVIEW

17          An appellate court reviews a bankruptcy court's findings of fact under the clearly

18  erroneous standard, *Sousa v. Miguel*, 32 F.3d 1370, 1372 (9th Cir. 1994), and its

19  conclusions of law de novo.  *In re Park-Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995).

## III.  STATEMENT OF THE FACTS

21          In order to understand why the Bankruptcy Court was correct in disallowing the

22  claims filed by John Lezdey on behalf of PSI and Sonoran, it is necessary to understand the

23

24

25  _____

26  [3] Though Arriva submits, as it argued below, that the Rooker-Feldman doctrine and the
    doctrine of collateral estoppel as to the burglary allegations also provide additional and
    alternative support for the Bankruptcy Court's ruling, it will not argue these bases here as
27  the Bankruptcy Court did not rely upon them in disallowing the Claims of PSI and
    Sonoran.

28

APPELLEE'S BRIEF
                                                                                    PSI AND SONORAN APPEALS

background of these claims and the consistent line of court rulings against the Lezdeys[4] with regard to these claims.

**A.      The Background of the Disallowed Claims.**

In the early 1990s, Dr. Allan Wachter and John Lezdey invented and jointly acquired patents for medical technologies related to the treatment of inflammation. (AA 184.)  In 1992, Dr. Wachter and Lezdey transferred their interests in the patents to Sonoran, which they had formed together.  Sonoran was 50% owned by Wachter, and 50% owned by John Lezdey.  (AA 184.)  Shortly thereafter, Dr. Wachter and Lezdey formed PSI, authorizing it to enter into licensing agreements on behalf of Sonoran.  (AA 109, 242.)

In 1997, Wachter, Lezdey, Philip Barr and David Kent formed Arriva, then known as AlphaOne Pharmaceuticals, Inc.  (AA 240.)   Arriva seeks to develop protease inhibitors for treatment of respiratory diseases.  Its main product under development is the biotherapeutic recombinant alpha 1-antitrypsin, commonly called "rAAT," which the company manufactures in engineered yeast cells.  Arriva also has been active in developing the protease inhibitors Ilomastat and SLAPI.

On April 16, 1998, PSI and Arriva entered into a License Agreement (the "Protease License") by which PSI granted to Arriva an exclusive license to exploit certain patents related to rAAT as set forth therein (the "Protease Patents").

**B.      The Arizona Court Upholds the Protease License and Issues Injunctions Against the Lezdeys.**

After the execution of the Protease License, the Lezdeys began to make the first of their many and repeated claims that the Protease License was invalidly executed.  These claims included threats of litigation against both Arriva and Allan Wachter.  (AA 246.)

---

[4] The "Lezdeys" shall mean collectively John Lezdey; Noreen Lezdey; Jarett Lezdey; Darren Lezdey; AlphaMed Pharmaceuticals Corp.; J.L. Technology, L.P.; J.L. Technology Ltd.; Jamie Holdings, LLC; J & D Science Inc.; and certain of their respective successors and assigns.

1    These claims have been made by various of the Lezdeys in several courts, and the result has

2    been a consistent line of judgments against the Lezdeys.

3        Initially, since both Arriva and Allan Wachter had been threatened with litigation,

4    Arriva and Wachter filed multiple suits against the Lezdeys to put these claims to rest.

5    These suits included a suit filed by Arriva in 1999 in the United States District Court for the

6    Northern District of California and a suit filed by Wachter shortly thereafter in the Superior

7    Court of Maricopa County, Arizona (the "Arizona Court").  Arriva and Wachter concluded

8    that the Arizona Court would be the most convenient forum to address the Lezdeys' claims,

9    and so Arriva agreed to finance Wachter's suit in the Arizona Court.  (AA 246.)  All parties

10    agreed that the litigation in the Northern District of California would be stayed while the

11    litigation in the Arizona Court was pursued.  (AA 246.)

12        Wachter's suit in Arizona sought, among other things, declaratory relief and

13    injunctions against various of the Lezdeys.  (AA 242.)  The Arizona Court first ruled against

14    the Lezdeys' assertions and found the Protease License to be valid on February 3, 2000, in

15    the context of issuing a preliminary injunction against John, Darren, and Jarett Lezdey, J&D

16    Science, Inc. and J.L. Technology Limited (the "Preliminary Injunction").  (AA 242-43,

17    347-359.)  The Preliminary Injunction enjoined said parties and "any other persons acting

18    for them or with them" from "acting or speaking, or purporting to act or speak, on behalf of

19    [PSI] or Sonoran without Plaintiffs' [Dr. Wachter's] express consent."  (AA 243, 359.)  The

20    Preliminary Injunction remains in force to this day.

21        In November of 2000, the Arizona Court added to its findings in support of the

22    Preliminary Injunction by issuing an amendment thereto.  (AA 186.)  In that amendment,

23    the Arizona Court held that a purported license between PSI and AlphaMed was invalid and

24    that John Lezdey had testified untruthfully in his deposition regarding such purported

25    PSI/AlphaMed license.  (AA 186.)

26        In January of 2002, a bench trial occurred in Arizona.  The bench trial had been

27    delayed several times, including by an unsuccessful attempt of John Lezdey to have the trial

28    removed to federal court in Arizona.  (AA 186.)  Also, John Lezdey filed bankruptcy on the

-4-

day before the trial was to commence, so the trial was automatically stayed as to him.
Nonetheless, the trial proceeded against Darren Lezdey, Jarett Lezdey, Noreen Lezdey and
J.L. Technology.  The trial included multiple hours of witness testimony and the
introduction of almost 300 exhibits.  (AA 186.)

On February 22, 2002, the Arizona Court issued a final judgment against the Lezdey
sons and a related entity, J.L. Technology, L.P.  (AA 187.)  The judgment included two
main components: (a) a permanent injunction (the "Permanent Injunction"); and (b) a
money judgment (the "Wachter Judgment").  The Permanent Injunction included another
finding in favor of the validity of the Protease License, and enjoined Darren Lezdey, Jarett
Lezdey, J.L. Technology and "any other persons or entities acting in concert with them"
from "acting or speaking, or purporting to act or speak, on behalf of" PSI or Sonoran
without Dr. Wachter's "express written consent."  (AA 174-75.)  In addition, the Permanent
Injunction enjoined these same parties "and any other persons or entities acting in concert
with them" from "taking any actions in any capacity to give effect to (or to draw to
themselves or any entity, including AlphaMed Pharmaceuticals, Inc., any benefit from) the
invalid License Agreements between" PSI and AlphaMed.  (AA 175.)

As to the monetary component, the Wachter Judgment included compensatory and
punitive damages in the amount of $17.4 million, which with interest now exceeds $20
million.  (AA 187, 246.)  As part of the agreement between Arriva and Wachter by which
Arriva agreed to finance the Arizona litigation, Arriva received a share in the collection of
moneys from the Wachter Judgment.  (AA 246.)  The Wachter Judgment has since been
assigned to Arriva in toto as part of Arriva's plan of reorganization.  (Appellee's Combined
Special Appendix,[5] 153, § 6.4(d).)

After the entry of the Permanent Injunction, the Arizona Court entered an "Under
Advisement Ruling" against John Lezdey.  In that Ruling, the court noted, among other

---

[5] Hereinafter, citations to Appellee's Combined Special Appendix shall be in the following
form: (SPA 001.)

1   things, that John Lezdey had failed to pay court fines, failed to cure contempt citations and

2   taken many actions that constituted a violation of the Preliminary Injunction.  Such actions

3   included speaking for Sonoran in a patent interference proceeding in the Patent and

4   Trademark Office, appearing in a European Court of Patent Appeals without Dr. Wachter's

5   consent, and contacting a group of Arriva investors without Wachter's consent.  The Ruling

6   ordered John Lezdey to surrender himself to the Maricopa County Sheriff's Office for

7   incarceration if he failed to purge the contempt by a set date.  (AA 188, 245.)

8
    **C.    The Northern District of California Recognizes the Arizona Court's Rulings**
9          **and Finds John Lezdey to Lack the Capacity to Act on Behalf of Sonoran.**

10        As stated above, in May of 1999, Arriva filed a complaint in this Court, before

11  United States District Judge Illston.  (AA 185.)  The case was filed by Arriva to obtain relief

12  in connection with the Protease License and a declaration that the Protease License was

13  valid.  (AA 247.)  The case was held in abeyance as the litigation proceeded in the Arizona

14  Court.  Since appropriate relief was obtained in the Arizona Court declaring the Protease

15  License valid, Arriva attempted to dismiss the litigation in the Northern District of

16  California, which included counterclaims made by various of the Lezdeys.  (AA 247.)  One

17  of the counterclaims was filed by John Lezdey on behalf of Sonoran.  (AA 188.)

18        District Judge Illston ultimately granted Arriva's motion to dismiss the defendants'

19  counterclaims for declaratory relief.  (AA 195.)  In reaching this conclusion, District Judge

20  Illston noted:

21              Lezdey knew the material terms and conditions of the
                [Protease] License Agreement, advised Wachter that the
22              Agreement was valid, and approved Wachter's execution
                thereof.
23

24  (AA 186.)  In addition, District Judge Illston noted the Arizona Court had determined "Arriva's

25  Protease License is 'valid and enforceable.'"  (AA 186.)  Applying the *Brilhart* doctrine, District

26  Judge Illston found that after sustaining "several adverse rulings in Arizona," the Lezdeys

27  engaged in forum shopping—"opportunistic maneuvering the Ninth Circuit has discouraged."

28  (AA 193.)  Consequently, District Judge Illston held that the Arizona Court's holding that

-6-

1   Arriva's Protease License was valid rendered all other judicial proceedings duplicative: "The

2   Court concludes that the Protease/Arriva license issue has already been extensively litigated in

3   the Arizona Court, and that any litigation in this court would be duplicative." (AA 190.)

4           In particular, as to the counterclaim filed by John Lezdey on behalf of Sonoran,

5   District Judge Illston held that the counterclaim must be dismissed due to the fact that

6   "Sonoran lacks capacity to file the counterclaim because it does not have Wachter's

7   authorization." (AA 194.)  More specifically, the Court held that such capacity was lacking

8   because Lezdey did not obtain Wachter's consent to the filing of the counterclaim, which

9   consent was required by both Sonoran's Operating Agreement and by the Preliminary

10  Injunction.  (AA 194-95.)

11  **D.    Arriva Prevails Against Similar Claims by AlphaMed in Florida.**

12          In 2003, another Lezdey entity, AlphaMed Pharmaceuticals Corp. ("AlphaMed")

13  filed suit against Arriva in the United States District Court for the Southern District of

14  Florida (the "Florida Court").  In 2005, the lawsuit proceeded to trial on three claims:

15  (1) misappropriation of trade secrets, (2) tortious interference with business and (3) unfair

16  competition.  *See AlphaMed v. Arriva*, 432 F. Supp. 2d 1319, 1329 (S.D. Fla. 2006).

17  Initially, a jury returned a verdict in favor of AlphaMed.  Arriva timely moved for judgment

18  as a matter of law ("JMOL") under Rule 50(b) of the Federal Rules of Civil Procedure.

19  District Judge Cecilia Altonaga granted Arriva's motion for JMOL, ordering as follows:

20              [I]t is hereby ORDERED AND ADJUDGED that judgment is
                entered in favor of [Arriva] . . . and against Plaintiff AlphaMed
21              Pharmaceuticals Corp.  Plaintiff shall take nothing from
                Defendants, and the action is DISMISSED on the merits.
22
23  (AA 198.)

24          In the course of her opinion, Judge Altonaga also gave preclusive effect to the

25  findings of the Arizona Court, stating that:  "John Lezdey's assertion that the license

26  agreement was executed without his approval is contradicted by a permanent injunction

27  entered in *Wachter v. Lezdey*, Case No. CV-99-009335 . . . ."  *AlphaMed Pharms. Corp. v.*

28  *Arriva Pharms., Inc.*, 432 F. Supp. 2d at 1324, n.6.

-7-

1      As in other litigation with the Lezdeys, Judge Altonaga held John Lezdey and

2  AlphaMed in contempt of court during the course of trial, this time for violating a

3  confidentiality order of the court.  (AA 250; SPA 416-17.)

4
5  **E.    Arriva's Bankruptcy Case and the Disallowance of the Sonoran and PSI Claims.**

6      Despite this consistent line of court rulings, the Lezdeys continued to make their

7  baseless assertions to rights in Arriva's intellectual property portfolio, in particular in a suit

8  filed by various Lezdey entities against Arriva in Nevada state court in June of 2007.  Due

9  to the effect of these continued baseless claims on Arriva's ability to raise the funding it

10  needs to bring its products to market, Arriva voluntary filed for bankruptcy on August 29,

11  2007 under chapter 11 of title 11 of the United States Code.  Arriva's bankruptcy case was

12  filed in the United States Bankruptcy Court for the Northern District of California as Case

13  No. 07-42767, and was presided over by Hon. Edward D. Jellen, United States Bankruptcy

14  Judge.

15      On October 9, 2007, PSI filed its Claim in Arriva's bankruptcy case in the amount of

16  $30 million, which claim was listed as Claim No. 12 on the claims register.  (AA 004.)

17  That same day, October 9, 2007, Sonoran also filed its Claim in Arriva's bankruptcy case in

18  an undetermined amount, which Claim was listed as Claim No. 14 on the claims register.

19  (AA 024.)  Each proof of claim form was signed by John Lezdey and only John Lezdey.

20  (AA 004, 024.)  Immediately following the proof of claim form was a page listing the three

21  bases for the Sonoran and PSI claims.  (AA 005, 025.)  For each of the Sonoran and PSI

22  Claims, the bases were exactly the same:

23          "1.    An action has been filed in Nevada against Arriva et al
24                 related to the findings of the jury in the Miami lawsuit
                    of AlphaMed Pharmaceuticals vs. Arriva.  The enclosed
25                 jury findings are attached.

26          "2.    Arriva agents have broken in offices and homes wherein
                 trade secrets were stored which were stolen.  The trade
                 secrets appeared in Arriva's patent applications.

27
28

1         "3.    Arriva paid Wachter to file lawsuits to harass the

2                 company and to waste its assets as per Arriva/Wachter
agreement which has been filed in this court."

3 (AA 005, 025.) This same sheet of paper was also attached to support two other proofs of

4 claim filed by the Lezdeys – those of JL Technology LP ("JL") and Jamie Holding

5 Company, LLC ("Jamie Holding"). (SPA 305, 321.)

6        Arriva responded by filing a timely objection to the Claims as part of its Omnibus

7 Objection (the "Objection") to various Lezdey-related claims on November 7, 2007. (AA

8 200-207.) In the Objection and the Memorandum of Points and Authorities filed in support

9 of the Objection, Arriva explained that, among other things:

10        (1) John Lezdey did not have the authority to file proofs of claim on behalf of PSI

11 and Sonoran since he had not obtained the consent of Allan Wachter as required under the

12 Preliminary Injunction (AA 203, 220-21; SPA 364); and

13        (2) Even if the court were to find Lezdey to have had the authority to file the proofs

14 claim, the bases for the Claims were insufficient to hold a valid claim in bankruptcy

15 because:

16           (a) the jury verdict form which was attached to the Claims could not serve as

17     a valid basis for a claim in bankruptcy because the jury verdict had been overturned

18     by the JMOL (AA 202, 221-23; SPA 364-67);

19           (b) the burglary allegations were barred by collateral estoppel arising from

20     the Arizona litigation and were also vague and unsubstantiated (AA 202-03, 226-

21     30; SPA 368); and

22           (c) the fact that Arriva financed the Arizona litigation could not serve as a

23     basis for a claim since such financing is perfectly legal, and the implications

24     regarding malicious prosecution were wholly unfounded since Wachter prevailed in

25     Arizona (AA 202-03, 230; SPA 368-69).

26 Arriva sought the disallowance of the PSI and Sonoran Claims, along with the claims of

27 various other Lezdey-related entities, and in the alternative, sought to have said claims

28 valued at zero under Bankruptcy Code Section 502(c) for the purposes of calculating the

-9-

1   number and weight of the votes the claimants would be allotted on Arriva's plan of

2   reorganization.  (AA 207, 231-32; SPA 370-72.)

3         A hearing was held on the PSI and Sonoran Claims on December 13, 2007.  At the

4   conclusion of the hearing, Judge Jellen disallowed each of the PSI and Sonoran Claims and

5   alternatively estimated them at zero.  (AA 517, l.25 – 518, l.14; 521, l.7-11).  In so ruling,

6   Judge Jellen stated:

> "[T]he omnibus objection will be sustained as to Protease
> [PSI].  The record is clear that Mr. Lezdey filed the claim on
> behalf of Protease.  He filed it in violation of a preliminary
> injunction.  I do not believe that the injunction in any way
> restricts or limits Federal Courts or Federal Court jurisdiction.
>
> All it does is restrict Mr. Lezdey from what he can do on
> behalf of Protease.  And the answer is that he can't do
> anything.  And that was a matter of nonbankruptcy state law as
> to what his authority is, Mr. Lezdey's authority, as to Protease.
>
> And so I reject the argument that not letting him file the claim
> for Protease is in derogation of any Federal jurisdiction.
>
> For the exact same reason I sustain the omnibus objection as to
> Sonoran."

(AA 517:25 – 518:14.)

17        The Bankruptcy Court's orders disallowing the PSI and Sonoran Claims without

18  leave to amend and alternatively estimating each of the Claims at zero for voting purposes

19  were entered on December 27, 2007.  (AA 435-36, 439-40.)  The Bankruptcy Court also

20  disallowed and estimated at zero the claims of JL and Jamie Holding, who had alleged

21  identical bases for their claims as PSI and Sonoran, but who did not face the lack of

22  authority issue like PSI and Sonoran.  (SPA 335-36, 339-40.)

23        On January 30, 2008, following a confirmation hearing on January 16, 2008 (SPA

24  118-19, docket #331), the Bankruptcy Court issued an Order confirming Arriva's plan of

25  reorganization.  (SPA 123, docket #347.)

26  **F.    This Appeal.**

27        On January 4, 2008, the Lezdeys' counsel filed notices of appeal of the Disallowance

28  Orders with regard to the PSI and Sonoran Claims.  (AA 449, 456.)  The Lezdeys also

-10-

initiated four related appeals.  This Court dismissed as moot the first of these, 08-1279-SI, on May 27, 2008.  This Court has ordered briefing on the remaining appeals, 08-00691-SI and 08-00825-SI, contemporaneous with the instant appeal.

## IV.  SUMMARY OF THE ARGUMENT

This Court should affirm because the Bankruptcy Court was correct in ruling that Full Faith and Credit required it to give preclusive effect to the findings in support of the Preliminary Injunction, which findings held that John Lezdey lacked the authority to act on behalf of PSI and Sonoran without Allan Wachter's consent.  The Bankruptcy Court expressly did not rely upon jurisdictional doctrines such as the Rooker-Feldman doctrine, as Appellants suggest, but rather performed its normal function of evaluating a claim under "applicable non-bankruptcy law" pursuant to 11 U.S.C. § 502(b)(1).

Appellants newly-raised arguments, which should be deemed waived since they were never raised below, are also without merit.  Arriva has standing to object to the filing of the PSI and Sonoran Claims by Lezdey, as shown by Arriva's relationship with Wachter and by Arriva's status as a Chapter 11 debtor.  Appellants are also incorrect in asserting that the Bankruptcy Court, in carrying out its usual function under Section 502(b)(1), somehow encroached upon state or corporation law.  Finally, Appellants' argument that the apparent authority doctrine validates Mr. Lezdey's actions is contradicted by the Bankruptcy Code and the apparent authority doctrine itself.

## V.  ARGUMENT

**A.    The Bankruptcy Court Correctly Found that the Preliminary Injunction Deprived John Lezdey of Authority to File the Proofs of Claim.**

In announcing its decision, the Bankruptcy Court stated that "All [the Preliminary Injunction] does is restrict Mr. Lezdey from what he can do on behalf of Protease.  And the answer is that he can't do anything.  And that was a matter of nonbankruptcy state law as to what his authority is, Mr. Lezdey's authority, as to Protease." (AA 518:6-9.)  The Bankruptcy Court then incorporated the same finding with respect to its disallowance of Sonoran's Claim.  (AA 518:13-14.)  Appellants argue that in so ruling, the Bankruptcy

Court erred because, among other things, the Bankruptcy Court could not give Full Faith and Credit to the Preliminary Injunction. The Bankruptcy Court was correct in its ruling and the Appellants are incorrect.

    1.    <u>The Bankruptcy Court Properly Gave Full Faith and Credit to the Arizona Court's Findings in the Preliminary Injunction</u>**.**

    a.    *Full Faith and Credit and Collateral Estoppel in Arizona.*

The Bankruptcy Court did not err in giving preclusive effect to the Preliminary Injunction in order to find that under applicable non-bankruptcy law, Mr. Lezdey had no power to act on behalf of PSI and Sonoran. Federal courts are required by 28 U.S.C. § 1731, which was enacted pursuant to the authority granted to Congress in Article IV, Section 1 of the United States Constitution, to give "full faith and credit" to the "records and judicial proceedings" of state courts. This means that federal courts are to give the same preclusive effect to state court judgments as would the courts of that state. *Noel v. Hall*, 341 F.3d 1148, 1166 (9th Cir. 2003).

Under Arizona law, when the findings in support of a preliminary injunction are made final by the issuance of a permanent injunction, they are granted preclusive effect. *City of Glendale v. Aldabbagh*, 189 Ariz. 140, 144 (Ariz. 1997) ("There is also no question that had the findings in support of granting the preliminary injunction been made final in the action, Aldabbagh would have been collaterally estopped from relitigating those facts."). In *City of Glendale* itself, the parties stipulated to the dismissal of the action before a permanent injunction was issued, so the court found there to be no preclusive effect. *Id*. For this reason, the Appellants' citation to *Glendale* is inapt, as it fails to take into account the court's holding that the findings in support of a preliminary injunction are granted preclusive effect when they are made final by a permanent injunction. For this reason also, the Appellants' citations to other Arizona case law miss the mark. In *State v. Shallock*, 941 P.2d 1275, 1280 (Ariz. 1997), a case having nothing to do with injunctions, the court merely cited the ruling in *City of Glendale* that a preliminary injunction on its own does not give rise to collateral estoppel. Likewise, *Elia v. Pifer*, 977 P.2d 796, 803 (Ariz. Ct. App. 1998)

is another case that has nothing to do with injunctions in which the court merely cited the ruling in *City of Glendale* that "findings at preliminary injunction hearing not sufficient to permit application of collateral estoppel doctrine because case settled instead of going on to the permanent injunction stage with entry of final judgment." *Elia*, 977 P.2d at 803.

In Arizona, "[c]ollateral estoppel, or issue preclusion, applies when an issue was [1] actually litigated in a previous proceeding, [2] there was a full and fair opportunity to litigate the issue, [3] resolution of the issue was essential to the decision, [4] a valid and final decision on the merits was entered, [5] and there is common identity of parties." *Hullett v. Cousin*, 204 Ariz. 292, 298 (2003). Significantly, a prior judgment will bind not only parties to the previous lawsuit, but also their privies. *Farmers Ins. Co. v. Vagnozzi*, 138 Ariz. 443, 446 (1983) (stating that under issue preclusion, "the determination of a litigated fact or law which is essential to a valid and final judgment is conclusive between the parties *or their privies* in a subsequent claim") (emphasis added); *Dressler v. Morrison*, 212 Ariz. 279, 282 (2006); *Wetzel v. Arizona State Real Estate Dep't*, 151 Ariz. 330, 332 (Ct. App. 1986); *Matusik v. Arizona Pub. Serv. Co.*, 141 Ariz. 1, 3 (Ct. App. 1984).

To determine whether there is "privity between a party and a non-party," a court must find "a substantial identity of interests and a working or functional relationship in which the interests of the non-party are presented and protected by the party in the litigation." *Hall v. Lalli*, 194 Ariz. 54, 57 (1999) (quoting *Phinisee v. Rogers*, 229 Mich. App. 547, 582 (1998)) (internal quotation marks and alterations omitted). The party and non-party must have common objectives, and not merely similar interests. *Id*. at 58. While Arizona case law is sparse on the matter, the Ninth Circuit has found privity in a wide range of circumstances, and especially between corporations and their major shareholders. *See Montana v. United States*, 440 U.S. 147, 154 (1979) (holding that "one . . . who assists in the prosecution or defense of an action in aid of some interest of his own . . . is as much bound . . . as he would be if he had been a party to the record") (citation and internal quotation marks omitted); *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997) (finding privity between president and corporation); *In re Gottheiner*, 703 F.2d 1136,

-13-

1139-40 (9th Cir. 1983) (finding privity between corporation and majority shareholder who controls corporation's affairs); *Blitch Ford, Inc. v. MIC Prop & Cas. Ins. Corp.*, 90 F. Supp. 2d 1377, 1380 & 1381, n.2 (M.D. Ga. 2000) (finding privity between secretary/minority shareholder and corporation for purposes of collateral estoppel).

     b.    *The Bankruptcy Court Correctly Found That Collateral Estoppel Applies to the Issue of John Lezdey's Authority to Act on Behalf of PSI and Sonoran.*

The Preliminary Injunction enjoined Mr. Lezdey and other of the Lezdeys "from acting or speaking, or purporting to act or speak, on behalf of [PSI] and Sonoran without [Wachter's] express consent." (AA 359.) In support of the injunction, the Arizona Court issued several findings of fact chronicling various invalid corporate actions taken by John Lezdey and other of the Lezdeys mainly on behalf of PSI, but also on behalf of Sonoran and even Arriva. (AA 179, 347-58.) Among these were:

> "67.    [John] Lezdey, Darren Lezdey, and Jarett Lezdey, have claimed authority to act on behalf of Protease without Wachter's consent or the authorization of the Protease Board of Directors and have acted in ways detrimental to the interests of Protease, Sonoran and/or Plaintiffs, including, without limitation: conducting discussions or negotiations with other companies to form business arrangements involving the development of certain uses of [AAT] in violation of the License Agreement; purporting to 'fire' Protease's and Sonoran's legal counsel and assuming the representation thereof; hiring attorneys to represent Protease and/or Sonoran in litigation commenced by [Arriva] to assert positions not approved by Protease's Board of Directors and inconsistent with its interests under the License Agreement." (AA 357-58.)

Though John Lezdey filed for bankruptcy on the eve of the ensuing bench trial, these findings were made final under *City of Glendale* when the Permanent Injunction was issued following the aforesaid bench trial. (AA 243-44.)

Thus, all the prongs of Arizona's collateral estoppel test have been clearly met. First, Mr. Lezdey's authority to act on behalf of PSI and Sonoran has been decided by the Arizona Court in the context of issuing the Preliminary Injunction, which ordered that he did not have the authority to act on behalf of PSI and Sonoran without Wachter's consent. Second,

1  Mr. Lezdey and the remainder of the Lezdeys had a full and fair opportunity to litigate this

2  issue, as the Arizona proceedings were complete with evidentiary hearings and, as to certain

3  other of the Lezdeys, a full bench trial.  Third, resolution of the issue of Mr. Lezdey's

4  authority was clearly necessary in order to issue an injunction against him from exercising

5  said authority.

6       Fourth, the Arizona Litigation resulted in a valid and final decision on the merits.

7  After trial, the Arizona Court made the Preliminary Injunction a Permanent Injunction (AA

8  162) and entered a money judgment in favor of Dr. Wachter.  (AA 381.)  This decision

9  remains a "final judgment" for the purposes of issue preclusion.  *Tripati v. Henman*, 857

10  F.2d 1366, 1367 (9th Cir. 1988); *Campbell v. Szl Props.*, 204 Ariz. 221, 222 (Ct. App.

11  2003) (holding that a lower court's decision is final for preclusion purposes unless vacated).

12       Fifth, there is a common identity of parties, in that Mr. Lezdey was a party to the

13  Preliminary Injunction and now claims that he has the authority to file proofs of claim on

14  behalf of PSI and Sonoran.  Inasmuch as the analysis should refer to PSI and Sonoran,

15  technically the legal entities that have filed this appeal, the Lezdey-controlled versions of

16  PSI and Sonoran should be deemed to be privies of Mr. Lezdey.  In this case, there is clearly

17  "a substantial identity of interests and a working or functional relationship in which the

18  interests of the non-party are presented and protected by the party in the litigation," *Halli v.*

19  *Lalli*, 194 Ariz. 54, 57 (1999).  The Lezdey-controlled versions of PSI and Sonoran are

20  nothing more than Mr. Lezdey himself.  As noted previously, the PSI and Sonoran Claims

21  were signed by Mr. Lezdey alone.  (AA 004, 024.)  Bases for the Claims included the

22  overturned jury verdict from the Florida litigation, which litigation was not between Arriva

23  and PSI or Sonoran, but rather between Arriva and AlphaMed, another Lezdey entity, which

24  was also named in the Preliminary and Permanent Injunctions.[6]  (AA 005, 025.)  Thus,

25  when under the unlawful control of John Lezdey, there is no difference for the purposes of

---

26

27  [6] Both the Preliminary Injunction (as amended) and the Permanent Injunction enjoin the named Lezdey defendants from taking any actions in any capacity, including on behalf of AlphaMed, to give effect to the invalid PSI/AlphaMed license.  (AA 175:14-22; 180:12-18.)

28

1  the collateral estoppel analysis between PSI and Sonoran on the one hand and Mr. Lezdey

2  on the other.

3      Consequently, the Bankruptcy Court correctly gave preclusive effect to the

4  Preliminary Injunction under the Full Faith and Credit Clause and the Arizona collateral

5  estoppel rules.  By ruling in such manner, the Bankruptcy Court reached a decision very

6  similar to the one reached by this Court when it dismissed a counterclaim filed by Sonoran

7  against Arriva on the basis that John Lezdey lacked capacity to act on behalf of Sonoran.

8  (AA 194-95.)

9  **B.    The Bankruptcy Court Correctly Evaluated the Legal Basis for the Claims
        Under Applicable Non-Bankruptcy Law in Order to Give Preclusive Effect to
10       the Preliminary Injunction.**

11     One of the basic flaws underlying the Appellants' Opening Brief is that it assumes

12  that in order to have ruled as it did, the Bankruptcy Court would have had to have relied

13  upon jurisdictional grounds, specifically the Rooker-Feldman doctrine.  (Opening Brief,

14  7:20 – 12:27.)  As evidenced by the Bankruptcy Court's rulings, what rather happened is

15  that, as required under Bankruptcy Code Section 502(b)(1), the Bankruptcy Court evaluated

16  the legal basis for the claim under applicable nonbankruptcy law and gave preclusive effect

17  to the Arizona Court's rulings, as explained above.

18     1.    <u>The Bankruptcy Court's Ruling Expressly Disclaimed Reliance on Rooker-
              Feldman and Instead Cited Applicable Non-Bankruptcy Law as its Basis</u>**.**

19

20     The Bankruptcy Court's rulings announced in open court make clear that it did not

21  rely upon the Rooker-Feldman in disallowing the PSI and Sonoran Claims.  Indeed, though

22  the Bankruptcy Court discussed Rooker-Feldman at the same hearing, the entire discussion

23  of Rooker-Feldman was in the context of dismissing AlphaMed's adversary complaint.  (AA

24  517:3-21.)  Instead, when disallowing the PSI and Sonoran Claims, the Bankruptcy Court

25  stated:

26          "I do not believe that the injunction in any way restricts or
            limits Federal Courts or Federal Court jurisdiction.

27
            All it does is restrict Mr. Lezdey from what he can do on
28          behalf of Protease.  And the answer is that he can't do

-16-

1    anything.  And that was a matter of nonbankruptcy state law as
2    to what his authority is, Mr. Lezdey's authority, as to Protease.

     And so I reject the argument that not letting him file the claim
3    for Protease is in derogation of any Federal jurisdiction.

4    For the exact same reason I sustain the omnibus objection as to
     Sonoran."
5

6    (AA 518:3-14.)  The Bankruptcy Court later noted that its statements on the record

7    constituted its findings and conclusions of law in support of its rulings.  (AA 521:3-4.)

8    When the Bankruptcy Court stated "I do not believe that the injunction in any way restrict

9    or limits Federal Courts or Federal Court jurisdiction", (AA 518:3-5), the Bankruptcy

10   Court by necessity disclaimed any reliance on the Rooker-Feldman doctrine for its ruling,

11   since the effect of the Rooker-Feldman would be to deny the Bankruptcy Court jurisdiction

12   to consider the legal basis for the Claims.  *See, e.g., Exxon Mobil Corp. v. Saudi Basic*

13   *Industries Corp.*, 544 U.S. 280, 284 (U.S. 2005).  Thus, the Bankruptcy Court explicitly

14   refrained from relying on Rooker-Feldman in disallowing the Claims, but rather found that

15   as a matter of applicable non-bankruptcy law, in this case the law of the State of Arizona,

16   John Lezdey did not have authority to file the proofs of claim on behalf of PSI and

17   Sonoran.  To arrive at that conclusion, the Bankruptcy Court gave preclusive effect to the

18   findings of the Arizona Court in the Preliminary Injunction pursuant to the Full Faith and

19   Credit statute and the collateral estoppel doctrine, as discussed above.

20
          2.    The Bankruptcy Court's Reasoning Is Supported by the Purpose and
21               Mechanics of Bankruptcy Code Section 502.

22        A full understanding of why the Bankruptcy Court's reasoning was correct requires a

23   short discussion of the background of its "applicable non-bankruptcy law" evaluation.  The

24   Bankruptcy Code mandates that a claim be evaluated under applicable non-bankruptcy law.

25   Under Bankruptcy Code Section 502(a), a claim is deemed allowed until a "party in

26   interest" objects.  A debtor or debtor-in-possession is a party in interest with standing to

27   object.  *See, e.g., In re Frazier*, 16 B.R. 674, 677 (Bankr. M.D. Tenn. 1981); *In re America*

28   *West Airlines*, 208 B.R. 476, 479 (Bankr. D. Ariz. 1997).  Bankruptcy Code Section 502(b)

-17-

then states a claim will be allowed unless it falls under one of nine enumerated categories. The broadest and most often cited is Section 502(b)(1):  "such claim is unenforceable against the debtor and property of the debtor, under agreement or applicable law for a reason other than because such claim is contingent or unmatured."  In other words, Section 502(b)(1) states that a claim will be governed by applicable non-bankruptcy state law.  *See, e.g., Travelers Casualty & Surety Company of America v. Pacific Gas and Electric Company*, 127 S.Ct. 1199, 1205 (U.S. 2007) (stating that "we have long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law", and that this principle "requires bankruptcy courts to consult state law in determining the validity of most claims") (internal citations omitted); *see also, In re Eastview Estates II*, 713 F.2d 443, 447 (9th Cir. 1983); *and* 4 Collier on Bankruptcy (15th ed. rev. 2008) § 502.03 ("The validity and legality of claims generally is determined by applicable nonbankruptcy law").  Thus, 502(b)(1) is a codification of the "Butner principle," first enunciated in the Supreme Court case of *Butner v. United States*, 440 U.S. 48 (U.S. 1979), that bankruptcy law should to the extent possible not affect state law-created rights. *Id*. at 54; *see also, In re A.G. Financial Service Center, Inc*., 395 F.3d 410 (7th Cir. 2005) (citing to the "Butner principle"); *In re Goco Realty Fund I*, 151 B.R. 241, 251 fn. 10 (Bankr. N.D. Cal. 1993) ("applying the principles recognized in *Butner v. United States*, the determination of property rights in the assets [is left] to state law") (internal quotation omitted); *and In re Ginn*, 186 B.R. 898, 902 (Bankr. D. Md. 1995) (citing the "Butner principle that nonbankruptcy law should apply the same inside as outside of a bankruptcy case").

     3.    <u>An Understanding of the Bankruptcy Court's Role Under 11 U.S.C. § 502(b)(1) Refutes Other of the Appellants' Arguments</u>**.**

In view of the Bankruptcy Court's rule under 502(b)(1), not only are the Appellants' arguments regarding the Rooker-Feldman Doctrine beside the point, in that the Bankruptcy Court did not rely upon Rooker-Feldman, but Appellants' argument that the Bankruptcy

-18-

1  Court's Disallowance Orders were somehow violating that court's "exclusive jurisdiction to

2  determine the claims" is also wrong.  (Opening Brief, 14:4 – 15:2).  Rather, the Bankruptcy

3  Court merely assumed its natural function under the Bankruptcy Code in ruling that as a

4  matter of nonbankruptcy law, John Lezdey had no authority to act on behalf of PSI and

5  Sonoran.  (AA 518:6-9.)

6        Section 502(b)(1) and the Butner principle also demonstrate the incorrectness in

7  Appellants' argument that the Bankruptcy Court "encroached upon state law."  (Opening

8  Brief, 15:3-21.)  The Bankruptcy Court did not issue a contempt order for Mr. Lezdey's

9  violation of the Preliminary Injunction, it again merely performed its function under

10 502(b)(1) and decided that Mr. Lezdey had no power to file the proofs of claim on behalf of

11 PSI and Sonoran under applicable nonbankruptcy law.  Further, to the extent that

12 Appellants' argument is predicated on the idea that the Bankruptcy Court cannot punish PSI

13 and Sonoran for Mr. Lezdey's violation of the Preliminary Injunction (AA 15:3-4),

14 Appellants miss the point just as they did when they made the same argument in their brief

15 below.  (SPA 352:2-11)  While PSI and Sonoran are not subject to the Preliminary

16 Injunction, John Lezdey is.  The relevant inquiry is not into the effect of the Arizona Court's

17 rulings on PSI and Sonoran, but rather their effect upon John Lezdey.  As explained in

18 further detail in the previous subsection, the Bankruptcy Court correctly ruled that the effect

19 of the Arizona Court's rulings was to deprive Mr. Lezdey of the authority to file the proofs

20 of claim on behalf of PSI and Sonoran.

21 **C.    This Court Should Refrain From Considering Those Arguments of the
22        Appellants that Were Not Raised Below.**

23        Before discussing the remainder of the arguments raised in Appellants' Opening

24 Brief, Arriva would like to point out that these arguments were not raised in the Appellants'

25 briefing in the Bankruptcy Court.  These arguments are the following: (1) Arriva lacks

26 standing to object to Mr. Lezdey's authority to file proofs of claim on behalf of PSI and

27 Sonoran; (2) the Bankruptcy Court encroached upon corporate law; (3) Mr. Lezdey's filing

28

1   of the PSI and Sonoran proofs of claims was validated by the doctrine of apparent

2   authority.[7]

3         Though Arriva will demonstrate the manner in which each of these arguments lacks

4   merit, Arriva also submits that this could should refrain from considering these documents

5   by reason of the fact that they were not raised in the Bankruptcy Court below.  *See e.g.,*

6   *Singleton v. Wulff,* 428 U.S. 106, 120-21 (U.S. 1976) ("a federal appellate court does not

7   consider an issue not passed upon below" unless "injustice might otherwise result") (internal

8   quotations omitted); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("As a general

9   rule, we will not consider arguments that are raised for the first time on appeal."); *United*

10  *States v. Rode Corp*., 996 F.2d 174, 180 (7th Cir. 1993) ("We consistently hold that

11  arguments not made in the district court are waived") (internal quotations omitted).

12  **D.**    **Appellants' Newly-Raised Arguments Have No Merit.**

13        1.    <u>Arriva Had Standing to Object to the Claims of Sonoran and PSI</u>**.**

14        In their Opening Brief, Appellants assert that the Bankruptcy Court erred in

15  disallowing the PSI and Sonoran Claims because Arriva lacked standing to challenge John

16  Lezdey's authority to file the Claims on behalf of PSI and Sonoran.  (Opening Brief, 16:13-

17  15.)  This argument is wrong as to both the facts and law presented in support of it.

18        As to the facts, it is clear that the Preliminary Injunction was intended to run to the

19  benefit of Arriva.  Indeed, at the heart of the Arizona litigation was the validity of the

20  Protease License, an agreement between Arriva and PSI.  (AA 242.)  The Protease License

21  has been a point of contention between the Lezdeys and Arriva in the Northern District of

22  California litigation filed by Arriva in 1999 and also in the adversary proceeding filed by

23  AlphaMed in Arriva's bankruptcy case.  (AA 190:2-3; 066-67.)  Wachter was the owner of

24  an interest in Sonoran and PSI, and Arriva was the licensee under the Protease License.

25  Therefore, Dr. Wachter and Arriva had a common interest in getting a true and fair

---

[7]  The Appellants only tangentially and conclusorily stated in the introduction to their brief
below that "Debtor cannot claim the benefit of [the Preliminary Injunction]" (SPA 351:11-
12), but never contested Arriva's standing in the body of their argument.

1    adjudication of the rights of both parties under the Protease License.  It is for this reason

2    that Arriva agreed to finance the Arizona litigation and Wachter agreed to share the

3    proceeds of the Wachter Judgment with Arriva.  It is also for this reason that Arriva posted

4    the bond required by Arizona law in connection with the Preliminary Injunction.  (AA

5    246:11-28.)  This identity of interests between Wachter and Arriva was expressly

6    recognized by the Northern District of California when it dismissed the Lezdey

7    counterclaims in 2006, stating that the validity of the Protease License "has already been

8    extensively litigated in the Arizona Court, and that any litigation in this court would be

9    duplicative."  (AA 190:12-13.)

10        As to the law, the single case cited in support of the Appellants' standing argument is

11   off base.  Appellants cite to *Gens v. Resolution Trust Corp.*, 112 F.3d 569, 574 (1st

12   Cir.1997) to support their argument that Arriva did not have standing to challenge the

13   authority of an agent of a claimant to file a claim under Bankruptcy Rule 3001(b).

14   (Opening Brief, 17:13-15.)  In *Gens*, the debtor based its objection to the agent's authority

15   on a federal regulation that was enacted to protect a class of persons of which the debtor

16   was not one.  *Gens*, 112 F.3d at 574.  The court in *Gens* was concerned about conferring

17   standing to all chapter 11 debtors to enforce the federal regulation in question.  *Id.*

18   ("Nothing in the statute, the RTC regulation or the attendant case law remotely suggests that

19   Congress or the agency itself intended to confer standing on chapter 11 debtors to enforce

20   the RTC regulation").  No such concern is present in this case.  Arriva is citing to a

21   particular decision rendered by a court, not a generally enacted federal regulation.  Further,

22   Arriva is not, as Appellants contend, solely relying upon its status as a chapter 11 debtor to

23   question the authority of Mr. Lezdey to file the proofs of claim for PSI and Sonoran.

24   Rather, as noted above, Arriva is able to challenge Mr. Lezdey's authority because Arriva

25   was an intended beneficiary of the Preliminary Injunction.

26        Further, even if Arriva were solely relying on its status as a chapter 11 debtor to

27   object to a claim on this basis, it would be entitled to do so.  Outside of the context of the

28   special situation in *Gens*, very few cases discuss explicitly discuss standing requirements for

-21-

objections under Rule 3001(b).  Most cases in which a debtor objects to proofs of claim under 3001(b) simply assume without explicitly deciding that the debtor has standing to object on this basis, and do not require the debtor to allege a specific interest in the subject matter of the law or rule that denies the purported claimant the authority to file the proof of claim.  *See, e.g., In re W.R. Grace & Co.*, 366 B.R. 302, 304 (Bankr. D. Del. 2007) (debtor is allowed to object to 71 proofs of claim by reason of lack of authority conferred by the claimants to the filing attorneys).  This is because a debtor's standing to object to a proof of claim that seeks payment from its estate is unquestionable under the Bankruptcy Code.  A debtor or debtor-in-possession is clearly a "party in interest" under Bankruptcy Code Section 502(a) that has standing to object to a claim.  *In re Frazier*, 16 B.R. 674, 677 (Bankr. M.D. Tenn. 1981); *In re America West Airlines*, 208 B.R. 476, 479 (Bankr. D. Ariz. 1997).  Finally, another consideration running in favor of Arriva's standing to object under 3001(b), aside from the fact that the Preliminary Injunction was intended for its benefit and the fact that it had status as a chapter 11 debtor to object to the claim, is that to allow Mr. Lezdey to file a proof of claim in Arriva's bankruptcy on behalf of PSI and Sonoran would be to in effect allow Mr. Lezdey to reap the fruits of an unlawful action.  It is an ancient and time-honored doctrine that one shall not profit from one's own wrong.  *See e.g., Future Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1092 (9th Cir. 2003).

   2. <u>The Bankruptcy Court Did Not Encroach Upon Corporate Law</u>.

  Appellants are also incorrect in their argument that the disallowance of the PSI and Sonoran Claims "encroached upon corporate law." (Opening Brief, 15:22-23.)  As explained above, the issue of Mr. Lezdey's authority to act on behalf of PSI and Sonoran was already decided by the Arizona Court.  The Bankruptcy Court then gave effect to the Arizona Court's ruling when evaluating the claim under applicable nonbankruptcy law.  The purpose of giving effect to the Preliminary Injunction's findings was to avoid relitigation of the corporate issues already decided by the Arizona Court.

-22-

3.    The Apparent Authority Doctrine Neither Applies Nor Validates Mr.
Lezdey's Filing of the PSI and Sonoran Claims.

Appellants also argue that the filings were valid under corporate law, citing *In re Cool Fuel, Inc.*, 117 Fed. Appx. 514 (9th Cir. 2004) for the proposition that the filings may be valid under the theory of apparent authority.  (Opening Brief, 16:2-6.)  The court in *Cool Fuel* cites the standard for apparent authority under California state law in the context of deciding the extent of a corporation's liability to third parties for the fraud of its officer: "A principal that puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud."  *Id*. at 516.

Appellants are wrong that the apparent authority doctrine could validate Mr. Lezdey's filing of the proofs of claim for two reasons.  First, though under Bankruptcy Code Section 502(b)(1) and the Butner principle, nonbankruptcy state law governs the substance of claims, when it comes to the procedural aspects of a bankruptcy-created right such as the filing of a proof of claim, the Bankruptcy Code and Bankruptcy Rules govern. *Walls v. Wells Fargo Bank, N.A.*, 255 B.R. 38, 46 (E.D. Cal. 2000) (holding that the Bankruptcy Code governs the remedies for violations of Bankruptcy Code sections), *aff'd* 276 F.3d 502 (9th Cir. 2002).  Specifically, Bankruptcy Rule 3001(b) governs the authorization required to file a proof of claim, a mechanism created by the Bankruptcy Code, on behalf of a party entitled to file under Bankruptcy Code Section 501.  Thus, the scheme of the Bankruptcy Code and Bankruptcy Rules preempts the agency authority doctrine with respect to the effect of an authorized filing of a proof of claim such as the one attempted by Mr. Lezdey.

Second, the apparent authority doctrine cannot validate Mr. Lezdey's actions because there was no reliance upon Mr. Lezdey's authority by third parties.  As per the standard cited by the Appellants in *Cool Fuel*, the apparent authority doctrine does not make the unauthorized corporate action valid as to the world, but only as to those who detrimentally relied upon the action.  It is fundamentally a doctrine about corporate liability.  *See, e.g.,*

W02-WEST:5MML1\400899289.3

*Ermoian v. Desert Hospital*, 152 Cal.App.4th 475 (Cal. Ct. App. 2007) ("The essential elements [of the apparent authority doctrine] are representations by the principal, justifiable reliance thereon by a third party, and change of position or injury resulting from such reliance").  In this case, no third party is alleged to have relied on whatever apparent authority Mr. Lezdey might have, since the automatic stay was in place preventing distributions of the estate's assets without court approval, 11 U.S.C. § 362(d) and Arriva filed a timely objection to the Claims.  Thus, it is not possible for the apparent authority doctrine to have validated the filing of the proofs of claims even if it were not preempted by the Bankruptcy Code and Bankruptcy Rules.

## VI.  CONCLUSION

For the reasons cited above, the Bankruptcy Court did not err when it disallowed the Claims of PSI and Sonoran.  This Court should affirm the Bankruptcy Court's Disallowance Orders and afford a finality to these proceedings that would benefit not only Arriva, but the multitude of other unsecured creditors sharing in Arriva's unsecured claims pool, all of whom have suffered from the same tired and redundant arguments of the Lezdeys that the Bankruptcy Court sought in part to foreclose when it disallowed the Claims of PSI and Sonoran.

Dated:  June 25, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By  /s/ Michael M. Lauter
_____
MICHAEL M. LAUTER
Attorneys for
ARRIVA PHARMACEUTICALS, INC.

-24-