1   Squire, Sanders & Dempsey L.L.P.
    Douglas J. Rovens (State Bar # 106582)
2   *drovens@ssd.com*
    James E. McDonald (admitted *Pro Hac Vice*)
3   *jmcdonald@ssd.com*
    Daniel T. Balmat (State Bar # 230504)
4   *dbalmat@ssd.com*
    One Maritime Plaza, Suite 300
5   San Francisco, CA  94111
    Telephone:   +1.415.954.0383
6   Facsimile:   +1.415.393.9887

7   Attorneys for
    ALPHAMED PHARMACEUTICALS CORP.
8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11           On Appeal from the United States Bankruptcy Court
                  for the Northern District of California
12                    Hon. Edward D. Jellen

13

14   PROTEASE SCIENCES, INC.,              Case Nos. 08-0692 and 08-0693

15              Appellant,                 (Appeal from Chapter 11 Bankruptcy Case No.
                                           07-42767)
16        vs.
                                           **E-FILING**
17   ARRIVA PHARMACEUTICALS, INC.,
                                           **COMBINED REPLY BRIEF OF
18              Appellant,                 PROTEASE AND SONORAN IN APPEAL
                                           FROM DISALLOWANCE OF PROOFS OF
19        vs.                              CLAIM**

20                                         **Hearing:**
     SONORAN DESERT CHEMICALS,             Date:      July 24, 2008
21   L.L.C.                                Time:      3:30 p.m.
                                           Location:  Courtroom 10, 19th Floor
22              Appellant,                            450 Golden Gate Ave.
                                                      San Francisco, CA 94102
23        vs.

24   ARRIVA PHARMACEUTICALS, INC.,

25              Appellee.

26

27

28

SQUIRE, SANDERS &                          APPELLANTS' COMBINED REPLY BRIEF
DEMPSEY L.L.P.                             Case No. 08-0692; Case No. 08-0693
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

1

2

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 3

       A.      Collateral Estoppel Did Not Apply Because There Was No Final
             Judgment As To John Lezdey ................................................................. 3

       B.      Collateral Estoppel Did Not Apply Because John Lezdey's
             Capacity To File Proofs Of Claim Was Not Actually Litigated
             In Arizona ............................................................................................... 4

       C.      Collateral Estoppel Did Not Apply Because Of A Different
             Legal Context: The Arizona Court Did Not Foresee Wachter's
             Conflict Of Interest As Manager For Both Creditors And Debtor..................... 7

       D.      Arriva Cannot Raise Another Party's Interest In Objecting To
             The Claims Of Sonoran And Protease ..................................................... 8

       E.      The Bankruptcy Court Encroached On Corporate Law By
             Failing To Consider John Lezdey's Apparent Authority To Act
             On Appellants' Behalf ........................................................................... 11

III.    CONCLUSION .................................................................................................. 12

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

1

**TABLE OF AUTHORITIES**

2

**Federal Cases**

3

*Associated Gen. Contractors of Cal. v. Coal. for Econ. Equity*,
   950 F.2d 1401 (9th Cir. 1991) ........................................................................................8

4

5

*Giles v. GMAC*,
   494 F.3d 865 (9th Cir. 2007) .......................................................................................9, 10

6

*In re Cool Fuel, Inc.*,

7

   117 F. App'x 514 (9th Cir. 2004) ...................................................................................11

8

*In re Gens*,

9

   112 F.3d 569 (1st Cir. 1997) ................................................................................... 10-11

10

*In re W.R. Grace & Co.*,
   366 B.R. 302 (Bankr. D. Del. 2007) ...............................................................................10

11

12

*Montana v. United States*,
   440 U.S. 147 (1979) .........................................................................................................7

13

14

*Taylor v. Sturgell*,
   No. 07-371, 76 U.S.L.W. 4453 (U.S. June 12, 2008).......................................................4

15

*Tripati v. Henman*,

16

   857 F.2d 1366 (9th Cir. 1988) ..........................................................................................3

17

*Warth v. Seldin*,
   422 U.S. 490 (1975)..........................................................................................................8

18

19

**State Cases**

20

*Campbell v. SZL Properties*,

21

   62 P.3d 966 (Ariz. Ct. App. 2003).....................................................................................3

22

*City of Glendale v. Aldabbagh*,
   939 P.2d 418 (Ariz. 1997) ............................................................................................3, 4

23

*Empire Mach. Co. v. Litton Bus. Tel. Sys.*,

24

   566 P.2d 1044 (Ariz. Ct. App. 1977)...............................................................................11

25

*Fovargue v. Singer*,
   270 P.2d 1090 (Ariz. 1954) ......................................................................................... 5-6

26

*Hullett v. Cousin*,

27

   63 P.3d 1029 (Ariz. 2003) .................................................................................................4

28

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-ii-

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3

**Page**

4

*Master Records, Inc. v. Backman*,
    652 P.2d 1017 (Ariz. 1982) ..............................................................................................9

5

*State v. Whelan*,
    91 P.3d 1011 (Ariz. Ct. App. 2004)...............................................................................7, 8

6

7

**Statutes and Rules**

8

28 U.S.C. § 157(a) .............................................................................................................6

9

28 U.S.C. § 1334 ...............................................................................................................6

10

Federal Rule of Bankruptcy Procedure 3001(b) ..............................................................10

11

U.S. Code, Title 11.....................................................................................................2, 6, 8

12

13

**Other Authorities**

14

RESTATEMENT (SECOND) OF JUDGMENTS, § 28 (1982) ........................................................7

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SQUIRE, SANDERS &**
**DEMPSEY L.L.P.**
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-iii-

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

## I.    INTRODUCTION

Throughout its brief, Arriva fails to appreciate the importance of this appeal for the future well-being of Protease and Sonoran. At issue is the ability of John Lezdey, as manager, to protect the interests of two corporate creditors after his former partner, Allan Wachter, incurred a conflict of interest and shifted his loyalty to the debtor.

The Bankruptcy Court disallowed the claims of Sonoran and Protease based upon two facts: John Lezdey signed the proofs of claim; and seven years earlier, an Arizona court preliminarily enjoined John Lezdey from representing Sonoran and Protease without Wachter's consent. The Bankruptcy Court provided the following limited analysis of its denials of the proofs of claim:

> The record is clear that Mr. Lezdey filed the claim on behalf of Protease. He filed it in violation of a preliminary injunction. I do not believe that the injunction in any way restricts or limits Federal Courts or Federal Court jurisdiction.
>
> All it does is restrict Mr. Lezdey from what he can do on behalf of Protease. And the answer is he can't do anything. And that was a matter of nonbankruptcy state law as to what his authority is, Mr. Lezdey'[s] authority, as to Protease.

(Appellants' Combined Appendix ("Apx.") at 518:1-9.) The Court also rejected Sonoran's proof of claim "[f]or the exact same reason." (Apx. at 518:13.) In so ruling, the Bankruptcy Court erroneously gave preclusive effect to the Arizona preliminary injunction.

All parties agree that the Bankruptcy Court was bound to give the same preclusive effect to the preliminary injunction as would courts of Arizona. (Opening Brief at 13; Arriva Brief at 12). The parties diverge, however, on what the Arizona courts would do if faced with this dispute. According to Arriva, the Arizona courts would apply issue preclusion despite an absence of final judgment as to John Lezdey, despite a difference in the actual issues litigated, and despite a change in the relevant legal context from one case to the next. (Arriva Brief at 14-16.) Not so.

In fact, Arizona courts *always* require a final judgment against the person sought to be precluded. Here, there was no final judgment against John Lezdey because the preliminary injunction against him was never made permanent due to his filing for bankruptcy. Furthermore, Arizona courts *always* require the issue from the second case to have been actually litigated in the

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-1-

1   first case.  Here, John Lezdey's ability to file proofs of claim was not actually litigated in

2   Arizona.  In addition (and contrary to Arriva's assertion), John Lezdey's general authority to act

3   on behalf of the companies in all types of settings was not actually litigated in Arizona.  By

4   conflating the *relief granted* with the issues *actually litigated*, Arriva has sought to obtain greater

5   benefit from the preliminary injunction than Arizona law permits.

6          Finally, Arizona courts never apply issue preclusion when there has been a change in the

7   applicable legal context from one case to the next.  Here, the legal context changed dramatically

8   from one case to the next: once Arriva sought protection under Title 11 of the U.S. Code,

9   Wachter's conflict of interest caused him to shift loyalty from Protease and Sonoran (the

10  creditors) to Arriva (the debtor).[1]

11         Given the Bankruptcy Court's limited explanation, Sonoran and Protease also believed

12  that the Court may have been (mistakenly) relying on the *Rooker-Feldman* doctrine for its

13  decision.  After Sonoran and Protease showed why that doctrine does not apply (Opening Brief at

14  10-12), Arriva followed suit and admitted that the Bankruptcy Court could not have been relying

15  on *Rooker-Feldman* for its decision, even though the *Rooker-Feldman* doctrine was proffered by

16  Arriva to the Bankruptcy Court as a basis for decision.  (Arriva Brief at 17:8-10.)  Thus, this case

17  largely boils down to the collateral estoppel doctrine as applied by Arizona courts.  In

18  misconstruing the proper legal test for collateral estoppel, the Bankruptcy Court committed an

19  error of law that must be reversed.  As Sonoran and Protease explained in their opening brief, this

20  Court should also vacate the Bankruptcy Court's hasty estimation of the claims at "zero" and

21  remand for proper evidentiary hearings on the value of the claims.  (Opening Brief at 21).

22  / / /

23  / / /

24  / / /

25  / / /

26

27         [1] The change in context (Wachter's newly incurred conflict of interest) was one of the first
    issues Protease and Sonoran raised in the court below: "There's also a practical question.
    Dr. Wachter has failed to cooperate in any fashion with Dr. Lezdey or anyone else to protect the
28  rights and interests of Sonoran or Protease in this Chapter 11 case."  (Apx. at 504:5-8.)

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-2-

## II.    ARGUMENT

### A.    Collateral Estoppel Did Not Apply Because There Was No Final Judgment As To John Lezdey.

Arriva admits that Arizona law requires a final judgment on the merits before collateral estoppel may apply.  (*See* Arriva Brief at 13.)  Arriva contends the final judgment requirement is satisfied because of a permanent injunction entered in Arizona against parties *other than John Lezdey*.  (Arriva Brief at 15:6-11.)  Arriva cites two cases in support of its argument, neither of which is apposite.

In *Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988), the Ninth Circuit precluded a plaintiff from re-litigating a claim that had been dismissed in a previous case.  The plaintiff argued his pending appeal nullified the judgment's finality, but the Court held "a final judgment retains all of its res judicata consequences pending decision of the appeal."  *Id.* at 1367 (internal quotation and citation omitted).  Unlike here, the judgment at issue in *Tripati* was entered against the person who was to be precluded, and thus its preclusive effect was proper.

Arriva also cites *Campbell v. SZL Properties*, 62 P.3d 966 (Ariz. Ct. App. 2003), in support of its argument that the "final judgment" requirement is satisfied.  In *Campbell*, the Arizona Court of Appeals reversed a trial court's application of issue preclusion because a final judgment that *had* existed against the appellants was vacated pursuant to the parties' settlement agreement.  *See Campbell*, 62 P.3d at 967, 970.  Much like *Tripati*, *Campbell* simply confirms that when there is no valid final judgment against the party sought to be precluded, issue preclusion cannot apply.  Indeed, *Campbell* demonstrates the strict application of the "final judgment" requirement under Arizona law.  Not even in *Campbell*—where there was a final judgment against the appellants at some point in time—did the Arizona Court of Appeals allow issue preclusion to apply.

Arizona law supports the conclusion that the "final judgment" requirement is not satisfied here.  In *City of Glendale v. Aldabbagh*, 939 P.2d 418 (Ariz. 1997), the Arizona Supreme Court held that issue preclusion was inappropriate because a preliminary injunction against Mr. Aldabbagh was never made final.  One of the findings underlying the preliminary injunction was

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-3-

1   that Mr. Aldabbagh permitted illicit acts at his business. *Id.* at 419.  And yet, when the trial court

2   applied this previous finding in a preclusive way, the Arizona Supreme Court <u>reversed</u> because

3   the finding was never made final. *Id.* at 422.  Under Arriva's analysis of the "final judgment"

4   requirement of issue preclusion, Mr. Aldabbagh was simply lucky that no other defendants were

5   named in the action against whom a final judgment was rendered.  Issue preclusion is not a

6   doctrine of luck, however; it is a doctrine where "sharp corners are preferable to . . . opaque

7   standards." *Taylor v. Sturgell*, No. 07-371, 76 U.S.L.W. 4453, at *39 (U.S. June 12, 2008).

8       Because the preliminary findings in the preliminary injunction were never made final as to

9   John Lezdey, the Bankruptcy Court erred as a matter of law when it afforded preclusive effect to

10  the preliminary injunction.  As did the Arizona Supreme Court in *City of Glendale*, this Court

11  must reverse.  By conflating the preliminary findings against John Lezdey with the final judgment

12  against *other defendants*, Arriva argues the *other defendants* had ample opportunity to refute the

13  preliminary findings against John Lezdey.  The problem with this argument is that the *other*

14  *defendants* did not have reason to dispute the charges leveled against John Lezdey.

15      Moreover, to the extent Arriva seeks to create a "final judgment" by applying the

16  permanent injunction (to which John Lezdey was not a party), Arriva urges a violation of the

17  automatic stay that was in place at the time of the entry of the Permanent Injunction as a result of

18  John Lezdey's filing for bankruptcy.  The law is clear that the automatic stay precluded entry of

19  the permanent injunction against John Lezdey.  Having benefited from the protection of the

20  automatic stay itself, Arriva clearly knows better.

21
22  **B.    Collateral Estoppel Did Not Apply Because John Lezdey's Capacity To File Proofs
        Of Claim Was Not Actually Litigated In Arizona.**

23      Arizona's doctrine of collateral estoppel requires the presence of five factors:

24          Collateral estoppel, or issue preclusion, applies when an issue was
            [1] actually litigated in a previous proceeding, [2] there was a full
25          and fair opportunity to litigate the issue, [3] resolution of the issue
            was essential to the decision, [4] a valid and final decision on the
26          merits was entered, and [5] there is common identity of parties.

27  *Hullett v. Cousin*, 63 P.3d 1029, 1034-35 (Ariz. 2003).  The absence of any single factor requires

28  reversal of the bankruptcy court's holding.

**SQUIRE, SANDERS &
DEMPSEY L.L.P.**
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-4-

1    According to Arriva, "Mr. Lezdey's authority to act on behalf of [Protease] and Sonoran

2    has been decided by the Arizona Court [that issued] the Preliminary Injunction." (Arriva Brief at

3    14). The problem with Arriva's statement is that it mistakes the preliminary relief granted for the

4    *issues actually litigated*. The Arizona Court's preliminary findings actually confirm that John

5    Lezdey had the corporate authority to act on behalf of Protease and Sonoran:

6    
> Sonoran has two members, each with a 50 percent interest . . . . [The
> members are] Nathan M. Technologies . . . and J.L. Technology . . . .
7    J.L. [is] owned by Lezdey

8    . . . .

9    
> Wachter and Lezdey formed Protease . . . Wachter and Lezdey are
> officers and directors of Protease . . . .
10    

11    (Apx. at 347-348.)

12    At most, one could say that the Arizona court *preliminarily* enjoined John Lezdey from

13    acting on behalf of the companies *without Wachter's approval*. Thus, had Wachter not incurred a

14    conflict of interest he would have necessarily agreed in line with his fiduciary obligations that the

15    financial rights of Protease and Sonoran must be protected; no one could claim that John Lezdey

16    contravened the preliminary injunction if he happened to be the one who signed the proofs of

17    claim to protect the interests of the patent holder and its agent.

18    As applied in Arizona, the same-issue requirement is not something to be taken lightly.

19    The Arizona Supreme Court has held that issue preclusion is inappropriate when two issues are

20    related but not the same. *See Fovargue v. Singer*, 270 P.2d 1090, 1093 (Ariz. 1954). In

21    *Fovargue*, Norris Singer sued his landlords to recover for property taxes that he claimed they

22    should have paid under the lease agreement. *Id.* at 1092. In the first action, a court held that the

23    landlords did not have to reimburse Singer for "the taxes paid to date." *Id.* In the second action,

24    Singer sued the landlords to recover for property taxes that he paid *after* the original action. *Id.*

25    The landlords argued that since Singer lost the first case, he was estopped from litigating the

26    second. The Arizona Supreme Court, however, held that issue preclusion did not apply. *Id.* at

27    1093. Despite a similarity in the issues, the Arizona Supreme Court explained that the issues

28    were not *actually* one and the same:

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-5-

1

2

3

> [Singer] could not have sued for the taxes not yet due [in the first action] . . . . Nor can the [landlords] successfully contend that the issue of liability for taxes was a contested issue actually litigated . . . . We therefore perceive no bar to the present action to recover taxes . . . and to have the lease construed.

4

*Id.*

5      Like the original trial court in *Fovargue*, the Arizona court that preliminarily enjoined

6   John Lezdey did not actually consider the issue which arose in the second case: namely, John

7   Lezdey's authority to file proofs of claim on behalf of Protease and Sonoran in the event that

8   Arriva declared bankruptcy. The Arizona Court would have had no reason to consider this issue:

9   Not only was Arriva's claim for relief under Title 11 a mere contingency, but it was also a

10   contingency that could only materialize in *federal* court. *See* 28 U.S.C. § 1334 (2008) ("the

11   district courts shall have original and exclusive jurisdiction of all cases under title 11."); *see also*

12   28 U.S.C. § 157(a) (2008) ("Each district court may provide that any or all cases under title 11

13   . . . shall be referred to the bankruptcy judges for the district."). Although state courts may hear

14   cases that involve issues relating to bankruptcy, only federal courts may entertain original claims

15   for relief under Title 11 of the U.S. Code. *See id.*

16      Thus, if "full faith and credit" means giving "the same preclusive effect to state court

17   judgments as would the courts of the state" (Arriva Brief at 12:12-13), then the Bankruptcy

18   Court's ruling was a non-sequitur. The Arizona courts could *never* give preclusive effect to the

19   preliminary injunction from this case because the Arizona courts have no jurisdiction to entertain

20   original claims for relief under Title 11 of the U.S. Code. Given this lack of jurisdiction, an

21   Arizona state court would simply have no power to decide which proofs of claim should be

22   accepted and which should be rejected.

23      For these additional reasons—that the issue was different, and that John Lezdey did not

24   have a "full and fair" chance to litigate the same issue—this Court must reverse the Bankruptcy

25   Court's misapplication of Arizona's law of collateral estoppel.

26   / / /

27   / / /

28   / / /

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-6-

**C.      Collateral Estoppel Did Not Apply Because Of A Different Legal Context: The Arizona Court Did Not Foresee Wachter's Disabling Conflict Of Interest As Manager For Both Creditors And Debtor.**

Arriva also fails to acknowledge the change in legal context which occurred from one case to the next. Under Arizona law, even an issue that otherwise qualifies for issue preclusion cannot be used in a preclusive way when "a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws." RESTATEMENT (SECOND) OF JUDGMENTS, § 28 (1982); *State v. Whelan*, 91 P.3d 1011, 1015-16 (Ariz. Ct. App. 2004) (quoting Section 28 of the Second Restatement of Judgments and stating that, "[t]his exception to the application of collateral estoppel has been expressly adopted in Arizona.") (internal citation omitted).

In *Whelan*, the Arizona court held a suppression order could not be used preclusively because of an intervening judicial declaration that changed the applicable legal context:

> The suppression order at issue was based on the premise that a medical assistant could not be a "qualified person" . . . .  After the suppression order . . . [it was] decided . . . that a phlebotomist was a "qualified person" . . . .

*Whelan*, 91 P.3d at 1016; *see also Montana v. United States*, 440 U.S. 147, 159 (1979) ("It is, of course, true that changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues.").

Like the court in *Whelan*, this Court should hold that a change in the applicable legal context rendered collateral estoppel inapplicable. It is important to remember that when granting the preliminary injunction against John Lezdey, the Arizona court presumed Wachter would fulfill his fiduciary duties to Sonoran and Protease:

> Lezdey and Wachter have a fiduciary relationship with Protease [and] Sonoran . . . .
>
> Lezdey's acts . . . threaten to . . . cause Protease and Sonoran to lose economic and other benefits. . . .
>
> Plaintiffs are entitled to a preliminary injunction . . . to prevent [John] Lezdey . . . from acting . . . on behalf of Protease or Sonoran without [Wachter's] expressed consent.

(Apx. at 356-358).

1    Once Wachter's conflict of interest aligned him with the debtor-in-bankruptcy (Arriva),

2    the Arizona court's earlier presumption no longer held true. Like the intervening judicial

3    declaration in *Whelan*, the Bankruptcy Court's order granting Arriva relief under Title 11,

4    Chapter 11 of the U.S. Code caused a shift in the applicable legal context. Once the Bankruptcy

5    Court granted an automatic stay, Wachter was not just a manager for various companies; he

6    became a manager for both a debtor-in-bankruptcy *and* for its corporate creditors. This was the

7    conflict of interest that Protease and Sonoran feared and the conflict of interest they raised to the

8    Bankruptcy Court below:

9
10    > There's also a practical question. Dr. Wachter has failed to cooperate
    > in any fashion with Dr. Lezdey or anyone else to protect the rights
    > and interests of Sonoran or Protease in this Chapter 11 case."

11    (Apx. at 504:5-8.)

12    Despite his managerial position with Protease and Sonoran, Wachter had a clear incentive

13    to fight zealously on behalf of Arriva to disqualify as many creditors as possible. By failing to

14    acknowledge this conflict of interest and applying collateral estoppel in contravention of Arizona

15    law, the Bankruptcy Court committed another error of law that requires reversal.

16
17    **D.    Arriva Cannot Raise Another Party's Interest In Objecting To The Claims Of Sonoran And Protease.**

18    In its brief to the Court, Arriva asserts that it had standing to challenge the claims of

19    Sonoran and Protease. (Arriva Brief at 20-22).[2] Arriva's assertion falls short on several fronts.

20    Factually, Arriva wrongly argues that the preliminary constraint on John Lezdey's ability to

21    _____

22    [2] Arriva also asserts that Protease and Sonoran waived the right to argue standing by failing to raise it in the court below. (Arriva Brief at 19:24-28). This assertion is false because Protease and Sonoran *did* raise the issue of standing: "since the Debtor [Arriva] is not and has never been a party to [the Arizona action], and is not and has never been a protected party pursuant to the injunctions . . . the Debtor cannot claim the benefit of, and should not be permitted to benefit from, that injunction." (Arriva Appendix at 351).

23
24
25    In addition, issues of standing cannot be waived in this Circuit. *See, e.g.*, *Associated Gen. Contractors of Cal. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1405 (9th Cir. 1991) ("As an initial matter, Appellees . . . argue that this case fails to present a case or controversy for Article III purposes because AGCC lacks standing . . . . This issue was not raised below. However, because a 'threshold question in every federal case' is 'whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III,' *Warth v. Seldin*, 422 U.S. 490, 498 (1975), this issue must be resolved before we may review the district court's [decision].").

26
27
28

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-8-

1  represent two companies (Sonoran and Protease) was somehow meant to benefit a *third* separate

2  company (Arriva).  Legally, Arriva misinterprets the meaning of "authorized agent" under the

3  federal bankruptcy rules by improperly combining two separate questions: whether Sonoran and

4  Protease authorized Mr. Lezdey to be their agent, and whether an *internal* managerial dispute

5  altered the nature of Mr. Lezdey's authority.  As a debtor in bankruptcy, Arriva had standing to

6  raise the first question, but could not raise the second.

7        In making its factual argument, Arriva neglects a basic tenet of corporate law:  if

8  a manager is suspected of wrongdoing with respect to a company, the potential wrongdoing

9  cannot include concerns about a completely different company.  Arriva's argument simply does

10  not match the reality of the corporate world, in which managers guard the interests of their

11  companies—and their companies only.  *See Giles v. GMAC*, 494 F.3d 865, 872 (9th Cir. 2007);

12  *see also Master Records, Inc. v. Backman*, 652 P.2d 1017, 1021 (Ariz. 1982).  If the Arizona

13  court in any way meant to defend the interests of Arriva, then a preliminary restraint on John

14  Lezdey's representation of Protease and Sonoran could not have been one of its chosen tools.

15  Because Arriva's objection to the proofs of claim rested on *that* specific preliminary restraint,

16  Arriva relied on a legal instrument that was not granted for its benefit.

17        Insofar as Arriva claims to derive standing from its "identity of interests" with Wachter,

18  Arriva is mistaken once again.  (Arriva Brief at 21:5.)[3]  When asking the Arizona court to

19  preliminarily enjoin John Lezdey from representing Protease and Sonoran, Wachter claimed to

20  act in the best interest of Protease and Sonoran.  Thus, as discussed above, the Arizona court

21  based its findings on the presumption that Wachter would continue to fulfill his fiduciary duties to

22  Protease and Sonoran.  (Apx. at 356-358).  It is only *now*—after Wachter chose to resolve his

23  conflict of interest by shifting all loyalty to Arriva—that Arriva comes before this Court and

24  claims it had a clear "identity of interest" with Wachter all along.  (Arriva Brief at 21:5.)

25        Implicit in Arriva's argument is an assumption that Wachter can shift loyalty from one

26  company to the next and share his legal standing with anyone he chooses.  The Arizona court had

27

28        [3] Arriva's argument, however, does prove the point that Wachter has a disabling conflict
of interest.

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

-9-

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

1    no reason to suspect Wachter would use its findings for the purpose of giving some third party

2    competitive advantage over Protease and Sonoran.  Yet that is exactly what happened in this case.

3    In obtaining the preliminary injunction, Wachter claimed to defend the interests of Protease and

4    Sonoran.  In trying to derive standing from Wachter, Arriva claims Wachter was acting in the

5    interests of Arriva.  (Arriva Brief at 20-21).  This Court should not allow Arriva and Wachter to

6    have it both ways.

7         In making its legal argument, Arriva offers inaccurate interpretations of the Bankruptcy

8    Code and Rules, and also fails to materially distinguish the well-reasoned decision in *In re Gens,*

9    112 F.3d 569 (1st Cir. 1997).  Federal Rule of Bankruptcy Procedure 3001(b) requires that a

10   proof of claim be signed by "the creditor or the creditor's authorized agent."  Taking the words of

11   3001(b) at face value, John Lezdey was indeed an authorized agent for Sonoran and Protease

12   because the governing documents of both companies listed him as an authorized manager.

13        To support its argument, Arriva reads something into 3001(b) which is not there—namely,

14   the question of whether internal managerial disputes altered the *nature* of John Lezdey's authority

15   on behalf of Protease and Sonoran.  By conflating the question of whether John Lezdey was an

16   authorized agent with the question of whether an internal managerial dispute altered the nature of

17   his authority, Arriva has tried to expand the scope of 3001(b) without giving any case law in

18   support.  In the only case cited by Arriva for this argument, *In re W.R. Grace & Co.*, 366 B.R.

19   302 (Bankr. D. Del. 2007), the court stated nothing which would expand 3001(b) beyond its

20   literal limits.  The court in *W.R. Grace* simply disallowed 71 proofs of claim because the

21   purported creditors had not authorized the filing attorneys to speak on their behalf before the time

22   of filing.  This case shares none of the concerns from *W.R. Grace* because both Protease and

23   Sonoran *had* expressly authorized John Lezdey to act on their behalf before the time of filing.

24        Finally, Arriva has not shown that a Chapter 11 debtor always has standing to object to a

25   proof of claim.  The basic principle behind *Gens*—that debtors have no standing to raise legal

26   documents not intended for their benefit—is not as strange as Arriva would have this Court

27   believe.  *See In re Gens*, 112 F.3d at 574.  The court in *Gens* explained the debtor "must assert

28   [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

1    interests of third parties." *Id.* Arriva's attempt to distinguish *Gens* falls flat. According to

2    Arriva, while the debtor in *Gens* improperly tried to benefit from a federal regulation, Arriva

3    itself is only trying to benefit from a judicial decision. (Arriva Brief at 21:16-21.) Arriva never

4    explains, however, why the difference between federal regulations and judicial decisions is

5    significant to this case. In fact, when neither type of instrument is created for the benefit of the

6    debtor, the fact that one is a federal regulation and the other is a judicial decision has no effect on

7    the ultimate result. The implication from *Gens* is quite clear: Arriva had to assert its own rights

8    and interests, and should not have been allowed to rest its objection on the purported legal rights

9    of Wachter. To the extent the Bankruptcy Court entertained Arriva's objections despite its lack

10   of legal standing, the Bankruptcy Court committed another error of law that must be reversed.

11
     **E.    The Bankruptcy Court Encroached On Corporate Law By Failing To Consider John
12          Lezdey's Apparent Authority To Act On Appellants' Behalf.**

13        Arriva argues that the apparent authority doctrine, as applied in *In re Cool Fuel, Inc.*, 117

14   F. App'x 514 (9th Cir. 2004), has no relation to this case. (*See* Arriva Brief at 24.)[4] Although

15   that case arose in a non-bankruptcy context, it sheds light on the general dynamics of this dispute.

16   In *Cool Fuel*, a company that authorized an individual to transact on its behalf became bound by

17   the legal consequences of his actions even though the individual failed to disclose significant

18   details of the transaction to the company. *See In re Cool Fuel*, 117 F. App'x at 515-516.

19        In essence, Protease and Sonoran should be treated like the company in *Cool Fuel*. Like

20   the agent in *Cool Fuel*, John Lezdey was a manager and therefore authorized by Protease and

21   Sonoran to act on their behalf. Even if John Lezdey could be found to be violating the

22   preliminary injunction in Arizona court (and failing to "disclose" the preliminary injunction to

23   Protease and Sonoran before signing the proofs of claim), Protease and Sonoran should be bound

24   by his signature. Contrary to Arriva's assertion, there exists an element of detrimental reliance in

25        [4] Arriva also asserts that Protease and Sonoran waived the right to argue apparent
     authority. (Arriva Brief at 19:24-28). Once again, Arriva is mistaken because all parties in the
26   court below discussed the issue of authority under nonbankruptcy state law. This is why the
     Bankruptcy Court observed that, "[this is] a matter of nonbankruptcy state law as to what his
27   authority is, Mr. Lezdey's authority . . . ." (Apx. at 518:8-9.) Apparent authority is a common
     law state doctrine that falls under general agency law. *See Empire Mach. Co. v. Litton Bus. Tel.*
28   *Sys.*, 566 P.2d 1044, 1049 (Ariz. Ct. App. 1977).

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-11-

this case. Besides the reliance of the companies themselves on John Lezdey's ability to protect their interests in the face of Wachter's conflict of interest, there is the reliance of potential investors. As two companies that were created to hold certain patents and effectuate their development, Protease and Sonoran depend on their financial security for their long-term success. The long-term success of Protease and Sonoran will remain in serious jeopardy until the Bankruptcy Court's erroneous ruling is reversed.

### III.  CONCLUSION

For the reasons stated herein and in their opening brief, Protease and Sonoran urge this Court to reverse the Bankruptcy Court's erroneous disqualification of their proofs of claim, and to remand for a proper valuation. Arriva had no standing to object to the proofs of claim. In addition, the Bankruptcy Court failed to apply the proper legal standard in determining whether the Arizona preliminary injunction should be used in a preclusive fashion. The Arizona preliminary injunction could not have any preclusive effect because it was never made final as to John Lezdey, because Lezdey's capacity to file proofs of claim was not actually litigated in Arizona, and because there was a significant change in legal context from one case to the next.

Dated: July 7, 2008

Respectfully submitted,

Squire, Sanders & Dempsey L.L.P.

By:    */s/ Daniel T. Balmat*
           Daniel T. Balmat

Attorneys for
ALPHAMED PHARMACEUTICALS CORP.

CLEVELAND/991201

SQUIRE, SANDERS &
DEMPSEY L.L.P.
One Maritime Plaza, Ste. 300
San Francisco, CA 94111

APPELLANTS' COMBINED REPLY BRIEF
Case No. 08-0692; Case No. 08-0693

-12-